**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSÉ A. HERNÁNDEZ-TIRADO,** | : | |
| | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-14-1897** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **CRAIG LOWE, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

## I.    Introduction

This *pro se* civil rights action was initiated on September 25, 2014, by plaintiff José A. Hernández-Tirado, a prisoner formerly confined at the Pike County Correctional Facility (PCCF), in Lords Valley, Pennsylvania.[1]  (ECF No. 1, Compl.)  An Amended Complaint was filed on January 16, 2015.  (ECF No. 27, Am. Comp.)  Named as Defendants are Warden Craig Lowe; Lieutenant (Lt.) Erik Campos; Correctional Officer (CO) Erik Christensen; CO Joedy Barry; CO Gaspare Vetrano; and Elisa Wenzel.

Presently before the Court is Defendants' Motion to Dismiss the Amended Complaint. (ECF No. 31.)  Mr. Hernández-Tirado filed an opposition brief.  (ECF No. 33.)  Defendants did not file a reply brief.

For the reasons that follow, the motion will be granted in part and denied in part.

---

[1] Mr. Hernández-Tirado is currently housed at the Beaumont United States Penitentiary (USP-Beaumont) in Beaumont, Texas.  *See* ECF No. 38, Change of Address.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims.  *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.  2000).  The Court does not consider whether a plaintiff will ultimately prevail.  *Id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).   Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964 - 65.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Instead, a complaint must "show" this entitlement by alleging sufficient facts.  *Id.*  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 127 S.Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 127 S.Ct. at 1950.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The

court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 - 30 (3d Cir. 1997)).

### III.    Mr. Hernández-Tirado's Amended Complaint[2]

#### A.    Warden Lowe

Mr. Hernández-Tirado claims that "since" filing his Complaint he has determined that Warden Lowe "was aware of the Harassment, Retaliation, Mistreatments Abuse and Discrimination" he suffered but ignored and failed to remedy the "widespread safety problems" to which he was exposed.  (ECF No. 27, ¶ 22 - 24.)  Because Warden Lowe is aware of these acts "through grievances, letters and complaints seeking help, personally involves Lowe of a conduct that caused an amounted violation of Plaintiff's Constitutional Rights."  (*Id*. at ¶ 25.) He also claims Warden Lowe, "Supervisors and Members of the Grievance Committee" abdicated their duties to supervise their subordinates and failed to conduct proper investigations of his grievances against staff.  (*Id*. at ¶¶ 14 - 16.)

---

[2]  Consistent with the Fed. R. Civ. P. 12(b)(6) legal standard, *supra*, the Court will accept Mr. Hernández-Tirado's properly pleaded allegations as true.

**B.    Corrections Officer Christensen**

On August 21, 2014, at about 10:00 p.m., Mr. Hernández-Tirado was escorted from his housing unit, Unit-C, to the "intake area" based on CO Christensen's request after he issued Plaintiff a disciplinary report for being in an unauthorized area and being disrespectful.  (*Id*. at ¶ 29.)  CO Christensen issued the misconduct report after ordering Mr. Hernández-Tirado to return to his lower tier cell after spotting him on the upper tier of the unit.  (*Id*. at p. 70.)  Plaintiff claims "[w]hite race inmates housed in a lower tier were on the upper tier and the C/O only addressed [him]".  (*Id*.)  Sgt. Graham (a non-defendant and CO Christensen's supervisor), interviewed Mr. Hernández-Tirado, and after watching "the video," dismissed the misconduct report and sent Plaintiff back to his housing unit.  (*Id*. at ¶ 29.)

Six days later, on August 27, 2014, CO Christensen searched Mr. Hernández-Tirado's cell outside of Plaintiff's presence.  (*Id*. at ¶ 30.)  Following the search, CO Christensen issued Mr. Hernández-Tirado a misconduct for the possession of property belonging to another person or unauthorized county property and possession of contraband altered item(s).  (*Id*.)  Specifically, CO Christensen found a blue pen casing, "chewed on near the tip," that contained a red ink cartridge.  CO Christensen found the altered pen in Mr. Hernández-Tirado's property.  (*Id*.; *see also* p. 57.)  CO Christensen asked Mr. Hernández-Tirado's cellmates, Agostini and Banks, who owned the pen.  (*Id*.)  After both denied ownership, Mr. Hernández-Tirado was issued the misconduct.  Plaintiff claims the misconduct was issued by CO Christensen in retaliation for his conversation with Sgt. Graham, CO Christensen's supervisor, on August 21, 2014.

On September 3, 2014, the PCCF Disciplinary Board, consisting of Lt. Campos, Ms. Wenzel and CO Vetrano, held a hearing on the misconduct. (*Id.* at ¶ 50.) Mr. Hernández-Tirado requested five witnesses to appear on his behalf at the hearing. Four of the five witnesses were called and questioned by the Disciplinary Board at the hearing. (*Id.*) The fifth witness, CO Willis, was not at the facility that day. Inmate Santiago testified he did not see where the pen was found but overheard CO Willis state that CO Christensen found the pen in Mr. Hernández-Tirado's tote. (*Id.*, p. 57.) Inmate Blondell testified to being present when CO Christensen questioned inmate Banks as to ownership of the pen. (*Id.*) Inmate Agostini testified that CO Christensen questioned him about the pen found on his desk. Agostini disavowed ownership of the pen or telling CO Christensen the pen belonged to Mr. Hernández-Tirado as reported in the misconduct. (*Id.*)

Initially, the Disciplinary Board advised Mr. Hernández-Tirado that "[d]ue to speaking to witnesses," he would receive their decision on September 4, 2014. (*Id.*, p. 55.) The next day he was again told that "[d]ue to speaking to witnesses," he would receive the outcome of his disciplinary hearing on September 5, 2014. (*Id.*, p. 56.) The Disciplinary Board's report notes that "Officer Willis states that Officer Christensen informed him that the pen had been found in inmate Hernandez-Tirado's tote." (*Id.*, p. 57.) "Based on the fact that a blue pen with a red ink cartridge was found in [his] property the board [found Plaintiff] guilty of the charge class I #44 A (Possession of contraband: altered items)." (*Id.*, p. 59.) As the second charge was redundant to the first offense, the Board dismissed it. (*Id.*) Mr. Hernández-Tirado was sanctioned to fourteen days in the Restricted Housing Unit (RHU).

Mr. Hernández-Tirado appealed the disciplinary decision claiming a proper investigation was not conducted. First, he alleged there was "no evidence" presented upon which the disciplinary board could base its decision. Second, Plaintiff argued his Due Process rights were violated when CO Willis "was telephone (sic) called on his day off for questioning about what happened". (*Id.*, p. 59). Mr. Hernádez-Tirado believes Lt. Campos' interview of CO Willis, outside of the presence of himself and the other Board members, was improper. (*Id.*)

Next, on September 8, 2014, while housed in the institution's RHU, Mr. Hernández-Tirado claims CO Christensen assaulted him. CO Putney (non-defendant) and CO Christensen entered Plaintiff's cell to place him in restraints prior to escorting him to the law library. (*Id.* at ¶ 35.) CO Christensen placed the right leg shackle on Plaintiff "extremely hard causing pain in [his] right ankle and leaving marks of the shackles." (*Id.*, p. 51.) When Mr. Hernández-Tirado complained of pain, CO Christensen, in a funny manner, asked "Why it hurts?" (*Id.*) CO "Christensen loosen the shackles and grab Plaintiff right arm and squeezed it." (*Id.* at ¶ 35.) Upon requesting to be seen by a member of the medical staff, CO Christensen told Mr. Hernández-Tirado to file a medical request slip. (*Id.*) Mr. Hernández-Tirado was seen by medical staff the following day. (*Id.*, p. 64.) Although no injury was noted to his right ankle or right upper arm, he was given Tylenol. (*Id.*, p. 64.)

CO Christensen is alleged to have made the following retaliatory comment to Mr. Hernández-Tirado "[a] few days" after learning that Mr. Hernández-Tirado spoke to his supervisor but before Plaintiff's receipt of the August 27, 2014 fabricated misconduct:

> You are the type of dude who likes to file grievances and that it doesn't matter if you filed a [lawsuit] because you will not get any money and nothing is going to be done

(*Id.* at ¶ 31.)

CO Christensen issued Plaintiff a second retaliatory misconduct on November 27, 2014. CO Christensen issued Mr. Hernández-Tirado a misconduct report after encountering water spilling from Plaintiff's toilet into the hallway and medical area of his housing unit. (*Id.*, p. 61.) Plaintiff claimed he only flushed the toilet once when it became clogged. (*Id.*) After the area was cleaned and disinfected, Mr. Hernández-Tirado was placed in Administrative Segregation. (*Id.* at ¶ 32.) Plaintiff claims CO Christensen only issued him a misconduct, even though there were other inmates on the same unit, when the "situation occurred". (*Id.* at ¶ 32.)

At Plaintiff's Disciplinary Board Action it was learned that Mr. Hernández-Tirado, who admitted to flooding his cell on other occasions, had a malfunctioning toilet. (*Id.*, p. 62.) The misconduct was dismissed after it was learned that Mr. Hernández-Tirado's toilet, and that of his neighbor's, shared common plumbing and both were malfunctioning when the flooding occurred. (*Id.*)

Next, Mr. Hernández-Tirado, who is Hispanic, claims CO Christensen discriminated against him on the basis of his race. CO Christensen allegedly treats Hispanics and African-Americans differently than members of the white race. (*Id.* at ¶¶ 38 - 39.) Plaintiff claims racial discrimination to be "the only plausible reason for the treatment [he] is experiencing." (*Id.*; *see also* p. 49) ("[D]iscriminatory intent is a possible explanation for what was going with the actions made by" CO Christensen.) Mr. Hernández-Tirado points to the unfounded misconducts CO Christensen issued him on "July 21, 2014"[3] and November 27, 2014,[4] and his

---

[3] As there is no record of Plaintiff receiving a misconduct on this date, it is believed that he
(continued...)

unreasonable cell searches as evidence of CO Christensen's racial discrimination. (*Id*. at ¶ 39.) Mr. Hernández-Tirado also claims to have suffered emotional distress as a result of CO Christensen's actions.

### C. Corrections Officer Barry

Mr. Hernández-Tirado claims CO Barry subjected him to racial discrimination. CO Barry's "racially offensive comments against Hispanics triggered arguments between inmates of different races which involve[d] Plaintiff in a serial of arguments". (*Id*. at ¶ 45; *see also* pp. 78 - 83.) On August 12, 2014, at approximately 1:00 p.m., CO Barry made the following racially charged comments "that could be subject to a race war against White, Blacks and Hispanics" (*Id*. at ¶ 46):

> all this search is thanks to Santana and Polanco. Just blame it on the Hispanics people.

While conducting the search, CO Barry told a white inmate (Stearns):

> now you cannot be blowing kisses to your girl because Polanco is complaining about that; I let you do it and do not said nothing to you but if he (Polanco) does it, I give him a twenty four (24).

(*Id*. at ¶ 46.) CO Barry's statements "created an atmosphere of racial tension on the block (Unit-C) in which Plaintiff has been affected and inmates had being (sic) involved in altercations (fights) inside of cells and living like enemies arguing". (*Id*.) After an altercation

---

[3](...continued)
is referring to the August 21, 2014 misconduct he received for being in an unauthorized area.

[4] This is the date Plaintiff received the misconduct for flooding his SNU cell.

between Polanco and Stearns, Polanco was pulled off the housing unit and received a misconduct. (*Id*.) Mr. Hernández-Tirado claims that CO Barry's racially charged comments created an atmosphere that placed his safety at risk. (*Id*.; *see also* pp. 79 - 80). Mr. Hernández-Tirado does not allege he was involved in a physical altercation with any other inmate due to the racially hostile environment CO Barry created within his housing unit.

Three months later, on November 15, 2014,[5] Mr. Hernández-Tirado claims CO Barry approached his SNU cell and asked him:

> (1) Why did you file a lawsuit against me and did not warn me about it; and
>
> (2) Do not think that you are getting any money out of this bullshit because the jail has good lawyers.

(*Id*. at ¶ 47.) Upset by these comments, Mr. Hernández-Tirado spoke with CO Barry's supervisor, Sgt. Frawley and filed a grievance. (*Id*.; *see also* p. 81 - 83).

Two months later, on January 8, 2015, CO Barry attempted to file a false misconduct against Mr. Hernández-Tirado. He claimed Plaintiff threatened another officer. (*Id*. at ¶ 48.) After learning that Sgt. Frawley spoke with two other officers who did not confirm his report, CO Barry reported to Sgt. Frawley that Plaintiff yells offensive comments at him. Again, Sgt. Frawley investigated the matter and could not confirm CO Barry's charges. (*Id*.) Mr. Hernández-Tirado claims CO Barry's actions are in retaliation for his filing of grievances and a lawsuit against him. (*Id*.)

---

[5] It is noted that Mr. Hernández-Tirado initiated this action on September 25, 2014.

## IV.    Discussion

### A.    Plaintiff's Claim for Injunctive Relief is Moot

Mr. Hernández-Tirado no longer resides at the PCCF; he is imprisoned at USP-Beaumont in Beaumont, Texas.  An inmate's transfer or release from the facility complained of generally moots equitable and declaratory claims.  *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2008); *Abdul- Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir.1993).  There is nothing in the present record to suggest a reasonable probability that Plaintiff will return to the PCCF in the future.  Accordingly, Mr. Hernández-Tirado's claim for injunctive relief will be dismissed as moot.

### B.    *Monell* Liability

A governmental entity cannot be held liable for the alleged unconstitutional actions of its employees on a theory of *respondeat superior*.  *See Monell,* 436 U.S. at 694, 98 S.Ct. at 2037 - 38.  Rather, to state a plausible § 1983 claim against a municipality, the complaint must contain factual allegations showing that a municipal custom or policy caused the constitutional violation.  *Id.; McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (the plaintiff must "identify a custom or policy, and specify what that custom or policy was").  A "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" must be established.  *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989).

"Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  *Berg v. Cty.*

*of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (internal citations and alterations omitted). A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute ... the force of law." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036.

A custom may be demonstrated by showing that a practice is so well-settled and widespread that the policymaking officials had actual or constructive knowledge of it. *Berg*, 219 F.3d at 276. To show causation where the alleged policy or custom does not facially violate constitutional rights, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. Of Cty. Comm'rs v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" that will trigger liability under § 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "Where the policy 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of person with whom those employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). To establish deliberate indifference, it is "ordinarily necessary" for plaintiff to show a "pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62, 131 S.Ct. at 1360. "[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."

*Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995). Finally, proof of the existence of an unlawful policy or custom is not sufficient to impose municipal liability under section 1983, there must also be a violation of the plaintiff's constitutional rights. *Brown v. Comm., Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003).

Here, Mr. Hernández-Tirado claims that the "Supervisory Officers and Committee Members of the PCCF failed to properly" supervise and monitor Plaintiff's safety and permitted a "pattern" of staff misconduct to develop and persist. (ECF No. 27, ¶¶ 14 - 16.) Defendants suggest he "fails to state a *Monell* claim because he does not identify a Pike County policy, practice or custom that infringed on his 8th or 14th Amendment rights." (ECF No. 32, Defs' Br. in Supp. Mot. to Dismiss, p. 9.) In response, Mr. Hernández-Tirado claims "[t]he rules and regulations of PCCF has been disrupted by the [ ] defendants violating Plaintiff['s] rights". (ECF No. 33-1, Pl's Opp'n Br., pp. 8 - 9.) He claims Warden Lowe knew of the harassment, retaliation and mistreatment through the grievances and letters sent to him seeking his help and Warden Lowe failed to respond. (*Id.*, p. 10.) However, Plaintiff does not suggest that Warden Lowe is a policymaker for the purpose of *Monell* liability or that his failures were due to his failure to properly implement a municipal policy or practice which caused his injury. Based on the allegations of the Amended Complaint, the Court finds that Plaintiff fails to state a municipal liability claim.

### C. Claims Against the Individual Defendants in their Official Capacities

Mr. Hernández-Tirado sues the individual Defendants in both their official and individual capacities. (ECF No. 27, ¶ 10.) Section 1983 "creates a private right of action to vindicate

violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361, 132 S.Ct. 1497, 1501, 182 L.Ed.2d 593 (2012); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 302 (3d Cir. 2016). Mr. Hernández-Tirado's official capacity claims are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.2d. 114 (1985). In this instance, that is the Pike County. Mr. Hernández-Tirado concedes his official capacity claims are barred. (ECF No. 33-1, p. 20.) Accordingly, Mr. Hernández-Tirado's claims against the Defendants in their official capacities are dismissed.

### D.   *Respondeat Superior* Claims against Warden Lowe

Defendants argue that Mr. Hernández-Tirado fails to state a claim against Warden Lowe because he lacks personal involvement in the alleged wrongs, and because Plaintiff's claims against him are based solely on the doctrine of *respondeat superior*.

Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Argueta*

*v. U.S. ICE*, 643 F.3d 60, 72 (2011) (quoting *Rode*, 845 F.2d at 1207). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of "conduct, time, place, and persons responsible." *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207 - 08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

A supervisory official may also be liable for a failure to train subordinates, a failure to train being considered as subcategory of establishing an unconstitutional policy or practice, personal conduct that would allow for the imposition of liability on a supervisory official. *See Korth v. Hoover*, 190 F.Supp. 3d 394 (M.D. Pa. 2016); *Palakovic v. Wetzel*, 854 F.3d 209, 233 (3d Cir. 2017). To properly assert such a claim of supervisory liability, a "plaintiff must allege that: '(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedures." *Mark v. Patton*, ____ F. App'x ____, ____, 2017 WL 2557412, *2 (3d Cir. 2017) (nonprecedential)(quoting *Barkes v. First Corr. Med., Inc.,* 766 F.3d 307, 317 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, ___ U.S. ___, 135 S.Ct. 2042, 192 L.Ed.2d 78 (2015)(per curiam)). Nonetheless, a defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000). Allegations that a supervisor "had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a

supervisor" do not suffice. *Broadwater v. Fow,* 945 F.Supp.2d 574, 588 (M.D. Pa. 2013) (citing *C.H. ex. rel. Z.H.*, 266 F.3d at 202)).

A state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or official grievance, does not establish the prison official's contemporary involvement in the alleged underlying unconstitutional conduct. *Ramey v. Mellow*, 675 F. App'x 109, 111 (3d Cir. 2017) (failure to respond to grievance insufficient basis to state a claim); *Simonton v. Tennis*, 437 F. App'x 60, 64 (2011) (supervisor's "secondary review of an inmate's grievance or appeal" does not demonstrate personal involvement); *Rode*, 845 F.2d at 1207 - 08 (after-the-fact review of a grievance is insufficient to demonstrate actual knowledge necessary to establish personal involvement); *Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (allegations of inappropriate response to later filed grievance concerning alleged unconstitutional events fails to allege personal involvement).

Mr. Hernández-Tirado claims he was issued false misconducts and assaulted by CO Christensen, and that CO Barry placed his life in danger by creating a racially hostile environment on his housing unit. He also asserts the members of the disciplinary panel (Lt. Campos, Ms. Wenzel and CO Vetrano) violated his due process rights at his misconduct hearing. Plaintiff fails to plead that Warden Lowe was personally involved in the alleged constitutional deprivations. Additionally, in the sixty (60) plus pages of documentation (ranging from letters to the Pennsylvania State Police, local police departments, the Marshals Service, the Department of Justice, misconduct reports, disciplinary appeals, and grievances forms) attached to the Amended Complaint, none of them suggest a basis upon which the Court can

find his personal involvement in the alleged constitutional violations.  *See* ECF No. 27, pp. 32 - 100.  Notably, the majority of these documents were authored between August and November 2014.[6]  Moreover, none of them were addressed to Warden Lowe.  Plaintiff provides no facts to support his conclusory allegation that Warden Lowe participated in, knew of or acquiesced to the other Defendants' alleged violation of his constitutional rights.  To the extent Warden Lowe may have incidentally received copies of the myriad of letters attached to the Amended Complaint, any attempt by Plaintiff to establish liability against Warden Lowe solely based upon his after-the-fact knowledge of the allege constitutional violations does not by itself support a constitutional claim.

Mr. Hernández-Tirado's arguments regarding policy making ability are equally insufficient.  "[T]o establish a claim against a policy maker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation."  *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015).  As noted earlier, Plaintiff fails to allege that Warden Lowe had policy making authority.  *Id.*, 806 F.3d at 223 ("Courts recognize that liability under § 1983 may be imposed on an official with *final policymaking authority* if that official establishes an unconstitutional policy that, when implemented, injures a plaintiff." (emphasis added)).  Mr. Hernández-Tirado thus fails to sufficiently allege that Warden Lowe is responsible for establishing or enforcing an unconstitutional policy that caused his injury.

---

[6]  Mr. Hernández-Tirado filed his initial Complaint on September 30, 2014.  (ECF No. 1.)  His Amended Complaint was filed on January 16, 2015.  (ECF No. 27.)

### E. Plaintiff's Due Process Claims against Lt. Campos, Ms. Wenzel and CO Vetrano

A pretrial detainee is protected by the Due Process Clause of the Fourteenth Amendment. *Hubbard v. Taylor*, 399 F.3d 150, 157-80 (3d Cir. 2005). "Although pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being [segregated] indefinitely ... without explanation or review of their confinement." *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007). "The protections due to sentenced inmates provide a floor for what pretrial detainees may expect." *Id*.

"The degree of process required under the Fourteenth Amendment varies depending on the reason for the transfer to more restrictive housing, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons." *Stevenson*, 495 F.3d at 70. In the context of a pretrial detainee who is transferred into more restrictive housing for purely administrative purposes, prison officials need only provide "an explanation of the reason for their transfer as well as an opportunity to respond." *Id*. If, however, a restraint is imposed for disciplinary reasons, a pretrial detainee is entitled to the process noted in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[7] (*Id*.) Where the procedural requirements of *Wolff* are met, the decision of the

---

[7] In *Wolff,* Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563 - 67, 94 S.Ct. at 2978 - 2980.

hearing examiner satisfies due process if there is "some evidence" to support the decision. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Id* at 455 - 56, 105 S.Ct. 2774.

Here Mr. Hernández-Tirado attacks both the process and the result of his September 2014 disciplinary hearing held by Lt. Campos, Ms. Wenzel and CO Vetrano. To the extent he challenges the disciplinary process, he fails to allege sufficient facts to suggest he was denied due process. The documents attached to the Amended Complaint demonstrate that Mr. Hernández-Tirado received a copy of the incident report and advance notice of the disciplinary hearing. He had the opportunity to make his own statement and present witnesses on his own behalf. None of his inmate witnesses were present when CO Christianson found the altered pen in Plaintiff's cell. He was provided with a written statement of the evidence upon which the disciplinary board relied, and an explanation for the reasons for the sanction imposed. While Plaintiff argues that it was improper for CO Willis to be interviewed outside of his presence, inmates do not have a constitutional right to confrontation and cross examination in prison disciplinary proceedings. *Wolff*, 418 U.S. at 567 - 68, 94 S.Ct. at 2980. Based on the allegations of the Amended Complaint, and the documents attached to it, Mr. Hernández-Tirado has not shown that he did not receive the due process required by *Wolff*.

Furthermore, due process only requires that disciplinary findings resulting in the loss of good time credits be supported by "some evidence" in the record. *Superintendent v. Hill*, 472 U.S. at 454 - 56, 105 S.Ct. at 2773 - 74. Here, the disciplinary board sanctioned Mr.

Hernández-Tirado's to fourteen days of disciplinary custody after holding that an altered pen was found in Plaintiff's property. While Plaintiff wishes to dispute whether the altered pen was found on his desk or in his tote, is immaterial. After receiving testimony from Mr. Hernández-Tirado's witnesses, the disciplinary board members based their decision "on the fact that a blue pen with a red ink cartridge was found in [Mr. Hernández-Tirado's] property the board [found him] guilty of the charge class I #44A (Possession of contraband: altered items)." (ECF No. 27, p. 58.) Ultimately, under the doctrine of constructive possession, Plaintiff is responsible for contraband found in his cell. *Griffin v. Spratt*, 969 F.2d 16 (3d Cir. 1992). Finally, the disciplinary board members were well within their discretion under *Wolff* in finding the reporting officer's report more credible than Plaintiff.

Mr. Hernández-Tirado's due process claim is also dismissed because he fails to allege a deprivation of "a protected liberty or property interest" under the Fourteenth Amendment. The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). A protected liberty interest may be created by either the Due Process Clause itself or by state law. *Id.* Due process requirements apply only when the prison officials' actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. at 2300. Conversely, there can be no due process violation where there is no protected liberty interest. *See Sample v. Diecks*, 885 F.2d 1099,

1113 (3d Cir. 1989) *see also Diaz v. Canino*, 502 Fed.Appx. 214, 217 (3d Cir. 2012) ("Without the presence of a protected interest, a § 1983 due process claim simply cannot stand.").

In *Sandin*, the Supreme Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301. The Third Circuit Court of Appeals, applying *Sandin*, have found no merit in due process claims presented regarding short term institutional administrative or disciplinary custody placement. *See Torres v. Fauver*, 292 F.3d 141, 150 - 51 (3d Cir. 2002) (placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); *Griffin v. Vaughn*, 112 F.3d at 708 (no liberty interest in being free from fifteen months in administrative custody because said confinement was not atypical). Thus, even if Mr. Hernández-Tirado disciplinary hearing did not comport with federal due process, it did not deprive him of a protected interest as he has failed to show that he was exposed to the atypical conditions for an extraordinary period of time that would implicate a liberty interest. Accordingly, Mr. Hernández-Tirado's due process claims against Lt. Campos, Ms. Wenzel and CO Vetrano will be dismissed.

### F. Plaintiff's Claim of Retaliation against CO Christensen is Adequately Pled

To prevail on a retaliation claim, a prisoner must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered some "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline

him. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. V. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[8] *See Lape v. Pennsylvania*, 157 Fed. App'x. 491, 498 (3d Cir.2005).

Once a prisoner establishes a *prima facie* case, a defendant may overcome the retaliation claim by showing "by a preponderance of the evidence that it would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citation omitted). Even if "a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenging decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to legitimate penological interest." *Rauser*, 241 F.3d at 334. When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. *Id.* at 334.

---

[8] Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. *Krouse v. American Sterlizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

Mr. Hernández-Tirado alleges CO Christensen engaged in a series of retaliatory activities following his August 21, 2014 conversation with CO Christensen's supervisor, Sgt. Graham, and his filing of grievances and lawsuits. (ECF No. 27, ¶¶ 26 - 41.) Specifically, he alleges CO Christensen engaged in the following retaliatory behavior: (1) August 24, 2014, search of his cell after which he issued him a misconduct for contraband; and (2) issued him a false misconduct on November 27, 2014, after the plumbing in his cell flooded a portion of the housing unit.

First, it is beyond dispute that Plaintiff has alleged that he was engaged in constitutionally protected conduct, the filing of grievances and lawsuits.

Second, Mr. Hernández-Tirado has sufficiently alleged that he suffered an adverse action in the form of a cell search on August 24, 2014, which would arguably deter a person of ordinary firmness from exercising his First Amendment rights. Although it is well established that cell searches are a routine part of prison life, *Hudson v. Palmer*, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200 - 01, 82 L.Ed.2d 393 (1984), it does not mean that searches which constitute "calculated harassment unrelated to prison needs" are permissible. *Id*. at 530, 104 S.Ct. at 3202. A cell search, and the resulting confiscation of property, may nonetheless constitute an adverse action,[9] if motivated solely by a retaliatory motive. *See Stafford v. Wetzel*, Civ. No. 4:CV013-2026, 2015 WL 474273, at *6 (M.D. Pa. Feb. 5, 2015) (denying defendants' motion to dismiss that a cell search could not constitute adverse action).

---

[9] An adverse action is any action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah*, 229 F.3d at 225.

Accordingly, his retaliation claim concerning his cell search and resulting misconduct will be permitted to proceed.

With respect Mr. Hernández-Tirado's receipt of misconduct reports, including the disciplinary report for flooding his cell, even if issued for retaliatory purposes, these claims are not sufficient to meet the adverse-action element of a retaliation claim. *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (a misconduct charge against a prisoner, which is later dismissed, for filing a false grievance does not rise to the level of "adverse" action for purposes of retaliation claim). Accordingly, Plaintiff's retaliation claim related to CO Christensen's issuance of misconduct reports, which were ultimately dismissed, do not state a claim of retaliation.

### G. Claim of Verbal Harassment by CO Christiansen and CO Barry

"It is well-settled that verbal abuse does not give rise to a constitutional violation under § 1983." *Begnoche v. DeRose*, 676 F. App'x 117, 121 - 22 (3d Cir. 2017). Mere verbal abuse, even abuse involving racial or sexual harassment, is not actionable as a civil-rights claim. *Dunbar v. Barone*, 487 F. App'x 721 (3d Cir. 2012)(nonprecedential) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment," also noting that racial harassment by mimicking Ku Klux Klan hoods failed to state a claim ); *Robinson v. Taylor*, 204 F. App'x 155, 156 (3d Cir. 2006)(nonprecedential)(inmate claiming correctional officers made racial and sexual comments toward him failed to state an Eighth Amendment claim). "However, words accompanied by physically intrusive behavior may amount to constitutional violation." *Begnoche*, 676 F. App'x at 122.

While Mr. Hernández-Tirado may categorize CO Christensen's language as "harassing," that does not elevate it to the level of a constitutional violation. *See* ECF No. 27, Am. Compl. at ¶31 and ECF No. 33-1, Opp'n Br. at p. 7. CO Christensen's statements while arguably harassing, without some reinforcing act accompanying them, do not state a constitutional claim.

Next, the Court examines the racially offensive comments by CO Barry. *See* ECF No. 27 at ¶ 44. Mr. Hernández-Tirado claims CO Barry created a racially charged housing unit due to his comments that blamed cell searches and other events "on the Hispanics people." (*Id*. at ¶ 46.) He also told Plaintiff that his lawsuits and grievances against him would not result in him "getting any money out of this bullshit because the jail has good lawyers." (*Id*. at ¶ 47.) This comment made Mr. Hernández-Tirado feel harassed and upset. (*Id*.)

As Defendants' note, the comments made by CO Barry would certainly be unprofessional. However, making racially offensive comments in the absence of threats of physical violence are not actionable. To the extent Mr. Hernández-Tirado claims that CO Barry's comments, which were directed to the entire block, and not individually at him (or referenced him), created a racially charged environment pitting Hispanics against other inmates, he fails to demonstrate that he personally suffered any harm as a result. Construing Mr. Hernández-Tirado's claim liberally, even if the Court were to extrapolate his claim to one of asserting that Defendants' did not provide him a safe environment due to CO Barry's comments, he fails to state a claim as the allegations concerning CO Barry do not rise to the level of extreme psychological harm.

To prevail on an Eighth Amendment claim under 42 U.S.C. § 1983, plaintiff must show that (1) he is incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison officials involved had a sufficiently culpable state of mind, or knew of and disregarded an excessive risk to his health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.1997). To the extent that Plaintiff's allegations can be considered a conditions-of-confinement claim, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (citation omitted).

CO Barry's racially charged comments were made to an entire housing unit, and were not exclusively directed, or otherwise singled out Plaintiff. Plaintiff does not assert that he was ever involved in a physical altercation due to CO Barry's comments. *See Gause v. Dombrowsky*, Civ. No. 07-3752, 2008 WL 4925011, at *3 (E.D. Pa. Nov. 17, 2008) ("[T]he Eighth Amendment is violated when an inmate endures verbal sexual harassment from prison guards *plus* physical sexual assault or threats of physical sexual assault.") (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)). Here Mr. Hernández-Tirado fails to allege that he was subject to assault or threats of assault due to CO Barry's racially charged comments. Thus, his comments of racially inappropriate comments, alone, is not enough to state an Eight Amendment violation. Thus, he fails to state a claim against CO Barry.

## H.    Excessive Use of Force

As a pretrial detainee at the time of the incident, Mr. Hernández-Tirado's excessive force claim is properly considered under the Fourteenth Amendment's Due Process Clause. *Kingsley v. Hendrickson*, ___ U.S. ___, ___, 135 S. Ct. 2466, 2475, 192 L.Ed.2d 416 (2015). A pretrial detainee asserting an excessive use of force claim need only show that the force purposely, knowingly, or possibly recklessly used against him was objectively unreasonable. *Id*. at ___, 135 S.Ct. at 2472.   To determine the reasonableness of the force used, the Court is to consider the following non-exclusive list of factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the defendant and (6) whether the plaintiff was activity resisting.  *Id*.

To establish a claim for use of excessive force in violation of the Due Process Clause of the Fourteenth Amendment, plaintiff must show that the force used was applied "maliciously and sadistically to cause harm" and not "in a good-faith effort to maintain or restore discipline." *Baez v. Lancaster Cty,* 487 F. App'x 30, 32 (3d Cir. 2012) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992)).   In evaluating an excessive force claim, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).  Plaintiff is required to show that the force purposely or knowingly used against him was objectively unreasonable.  *Kingsley*, 135 S. Ct. at 2473.

Here, Mr. Hernández-Tirado charges that on September 8, 2014, CO Christensen used excessive force when applying shackles to Plaintiff's right ankle and holding his arm while transporting him from the RHU to the law library. (ECF No. 27 at ¶¶ 34 - 36.) When Plaintiff advised CO Christensen that the shackles were causing him pain, CO Christensen "in a funny manner and laughing about it ... loosen[ed] the shackles and grab[bed] Plaintiff['s] right arm and squeezed it in the way that Plaintiff ha[d] to react and force a move, so Plaintiff can released his arm from Christensen's grip." (*Id*. at ¶ 35.) Plaintiff was seen by medical the following day. (*Id*., p. 64.) No injuries to his ankle or right arm were noted. (*Id*.) He was given Tylenol. (*Id*.)

Defendants assert that to the extent Mr. Hernández-Tirado was injured following this event, his injuries were *de minimis* and thus fail to state a claim. At this stage of the litigation, the Court cannot agree. The absence of injuries only suggests that the amount of force CO Christensen used was de minimis, not that it was objectively reasonable. Accordingly, the Court will allow Mr. Hernández-Tirado's excessive use of force claim against CO Christensen to proceed.

I.      **Pennsylvania Political Subdivision Tort Claim Act.**

The PCCF Defendants contend that Mr. Hernández-Tirado's state law negligence claims against them should be dismissed because they are immune from state law tort claims such as this under Pennsylvania's Political Subdivision Tort Claims Act (PPSTCA), 42 PA. CONS.STAT. § 8501, *et seq.* Defendants are correct. To the extent Mr. Hernández-Tirado claims the Defendants are negligent under state law, the immunity protection provided by the

PPSTCA bars such a claim since the claims do not fall within any of the exceptions in which liability claims are permitted. *See Stanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) ("The Act provides that 'no local agency shall be liable for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof or any other person' 42 Pa. Const. Stat. § 8541.") Plaintiff's negligence claims do not fall within any of the exceptions in which liability claims are permitted. Accordingly, the individual Defendants are entitled to immunity under the PPSTCA and Mr. Hernández-Tirado's state negligence claims will be dismissed.

An appropriate order follows.

**/s/ A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**

**Date: August 10, 2017**