# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE A. HERNANDEZ-TIRADO,

    Plaintiff,

v.

CRAIG LOWE, *et al.*,

    Defendants.

NO. 3:14-CV-1897

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion for Summary Judgment (Doc. 47) filed by Defendant Erik Christensen ("Defendant"). Plaintiff Jose Hernandez-Tirado ("Plaintiff") has two claims remaining in this *pro se* civil rights action against Defendant: (1) First Amendment retaliation; and (2) Fourteenth Amendment excessive force. Plaintiff contends that after he complained to Defendant's superiors and filed grievances, Defendant retaliated by searching his cell and charging him with a misconduct for contraband. Plaintiff also asserts that Defendant used excessive force against him when shackling his ankles and grabbing his arm while he was a pretrial detainee. Defendant's motion will be granted. First, summary judgment will be granted in favor of Defendant on the First Amendment claim based on his same decision defense. Second, because the use of force challenged by Plaintiff was not objectively unreasonable, Defendant will be granted summary judgment on the Fourteenth Amendment claim.

## I. Background

The facts are derived from Defendant's Statement of Facts and supporting exhibits. (*See* Doc. 48, "Def.'s SMF").[1] In August 2014, Plaintiff was a pretrial

---

[1] Local Rule 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be

detainee at the Pike County Correctional Facility ("PCCF"). (*See id*. at ¶¶ 1, 10-11, 33). In or about that month, Plaintiff filed grievances about Defendant and complained to Defendant's supervisors, including Sergeant Graham, that he was being harassed and retaliated against by Defendant. (*See id*. at Ex. "A", 30).

On August 27, 2014, while on duty as the C-Unit Housing officer, Defendant searched Plaintiff's cell and located a blue pen with a red ink cartridge in Plaintiff's property. (*See id*. at ¶¶ 33-34). Defendant prepared an incident report explaining, *inter alia*, that the pen was altered to contain red ink instead of blue ink, that one of Plaintiff's cellmates, Mario Agostini, indicated the pen belonged to Plaintiff, and Plaintiff denied that it was his pen. (*See id*. at ¶ 35). Plaintiff was charged with Class I #29 and Class I #44a misconducts. (*See id*. at Ex. "A", 8). A hearing was scheduled on the charges for the following week. (*See id*.).

Plaintiff presented his summary of events at the disciplinary board hearing on September 3, 2014. (*See id*. at 9). Plaintiff denied that it was his pen. (*See id*.). Mario Agostini also denied telling Defendant it was Plaintiff's pen. (*See id*.). The board noted that it also spoke to Defendant and Officer Willis. (*See id*.). Defendant stated that he found the pen in Plaintiff's property, while Officer Willis stated that he was informed by Defendant that the pen was located in Plaintiff's tote. (*See id*.). The three member disciplinary board found Plaintiff guilty of the Class I #44a charge (possession of contraband: altered items) "[b]ased on the fact that a blue pen with a red ink cartridge was found in your property." (*Id*. at 10). The Class I #29 charge was

> tried." M.D. Pa. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issue for trial. *See id*. Unless otherwise noted, the factual background herein derives from Defendant's Rule 56.1 statement of material facts. Plaintiff did not file a response to the statement of facts, so the facts set forth by Defendant are deemed undisputed. *See* M.D. Pa. L.R. 56.1; *accord Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) ("a district court's application and interpretation of its own local rules should generally be reviewed for abuse of discretion.").

2

dismissed, however, as redundant of the other misconduct. (*See id*.). Plaintiff was sanctioned to fourteen (14) days in restricted housing. (*See id*.).

Plaintiff appealed the finding of the disciplinary hearing board. (*See id*. at 25). The appeal was denied by Assistant Warden Robert E. McLaughlin, who found that "the Disciplinary Board was presented with and entertained sufficient evidence regarding the charge you were found guilty of. You have neither provided nor have I perceived any information which would lead me to overturn the Disciplinary Board's decision. As such, the sanction will remain as it was conveyed to you at the conclusion of your disciplinary board hearing." (*Id*.).

On September 8, 2014, Plaintiff was shackled by Defendant before he was escorted from his cell to the prison law library. (*See* Def.'s SMF, ¶¶ 13, 15). According to Defendant, after the shackles were placed on Plaintiff, he claimed that they were too tight and Defendant immediately loosened them. (*See id*. at Ex. "A", 36). During the escort to the law library, Plaintiff began resisting, which required Defendant to grab Plaintiff's arm. (*See id*.). Plaintiff did so despite the explicit orders not to do so. (*See id*.). Thereafter, Plaintiff called Defendant a "pussy" and told him that the "next time I will punch you in the face and knock you out," and "if I don't do it here, I'll find you on the street." (*Id*.). As a result, Defendant prepared an incident report and Plaintiff was issued Class I #9, Class II #15, and Class II #17 misconduct charges. (*See id*. at Ex. "A", 22). Officer Putney also prepared an incident report related to Plaintiff's escort to the law library. (*See id*. at Ex. "A", 20). After Plaintiff was shackled, Officer Putney proceeded to a different cell, and while speaking with another inmate, Officer Putney heard Plaintiff state "fuck you, you pussy" to Defendant. (*Id*.). Officer Putney further noted that Plaintiff "did make an attempt to pull away from Officer Christensen during the escort to law library and he was given a clear and precise directive to cease his behavior." (*Id*.).

The next day, September 9, 2014, a nurse examined Plaintiff at his request for right ankle pain and right arm pain. (*See id*. at Ex. "A", 7). The nurse documented

that the pain started after an officer put the shackles on too tight and then grabbed his right arm. (*See id*.). The nurse noted that no injuries were seen to Plaintiff's right arm or right ankle, there was no redness, swelling, or bruising to either site, and Plaintiff could return to his unit without restriction. (*See id*.). The nurse also observed Plaintiff ambulate out of medical "without difficulty." (*Id*.).

Plaintiff filed a grievance based on that incident, disputing the events as detailed by Defendant. According to Plaintiff, he only pulled away from Defendant after his arm was gripped and squeezed. (*See id*. at Ex. "A", 29-30). Plaintiff's grievance and appeals were denied. (*See id*. at Ex. "A", 28-30).

Plaintiff also disputed the events at his disciplinary board hearing. (*See id*. at Ex. "A", 17). Plaintiff explained that after he asked to go to the law library, "[Defendant] put the shackles on and squeezed them on my ankles. I asked him to please loosen and I asked him why he did that and he said I'm just fucking with and I asked him not to fuck with them and he did loosen them." (*Id*. at Ex. "A", 17). After Plaintiff stood, Defendant squeezed his arm and Plaintiff pulled away. (*See id*.). In response, Plaintiff claims Defendant told him that if he moved again his face would be slammed into the wall. (*See id*.). Plaintiff responded by calling Defendant a "pussy" and to "call mother fuckin medical pussy." (*Id*.). Inmate Robert Colao testified at the disciplinary board hearing on September 11, 2014. He explained that Defendant "put the handcuffs too tight and said he was just messing around with the inmate and loosened them." (*Id*.). Colao also observed Defendant stand Plaintiff up and Plaintiff "pulled his arm away, in the cell." (*Id*.). He also heard Plaintiff "saying fuck you pussy" to Defendant. (*Id*.). The disciplinary board found Plaintiff guilty of the charges for Class II #15 (acting insolent towards a staff member) and Class II #17 (using abusive language), but dismissed the Class I #9 charge as unfounded. (*See id*.). Plaintiff was again sanctioned with fourteen (14) days in restricted housing. (*See id*.).

Based on the foregoing, Plaintiff commenced the instant action on September 30, 2014. (*See* Doc. 1, *generally*). On request of Plaintiff, (*see* Doc. 23, *generally*),

4

he was given leave to file an amended pleading, (*see* Doc. 25, *generally*), which he did on January 22, 2015. (*See* Doc. 27, *generally*). Therein, Plaintiff asserted claims against Defendant and other PCCF employees. (*See id*., *generally*).

Defendants moved to dismiss the Amended Complaint, (*see* Doc. 31, *generally*), and that motion was granted in part and denied in part on August 10, 2017. (*See* Docs. 39-40, *generally*). Specifically, Plaintiff was permitted to proceed only with respect to his excessive force and retaliation claims against Defendant Christensen. (*See* Doc. 40, ¶¶ 12-13). All other claims advanced in the Amended Complaint were dismissed. (*See id*. at ¶¶ 3-11). Defendant timely filed his Answer and Affirmative Defenses to the Amended Complaint. (*See* Doc. 41, *generally*).

Following the close of discovery, Defendant filed the instant motion for summary judgment on Plaintiff's remaining claims, (*see* Doc. 47, *generally*), as well as his Statement of Material Facts and supporting brief. (*See* Docs. 48-49, *generally*). The time to respond to the motion has passed without opposition by Plaintiff.[2] Accordingly, Defendant's motion for summary judgment is ripe for review.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues

---

[2] Although Plaintiff did not file a brief or submit evidence in opposition to Defendant's summary judgment motion, I still analyze the merits of the motion to determine whether summary judgment is warranted. *See Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993); *Anchorage Associates v. Virgin Islands Board of Tax Review*, 922 F.2d 168, 174-75 (3d Cir. 1990); *Moultrie v. Luzerne Cty. Prison*, No. 06-1153, 2008 WL 4748240, at *2 (M.D. Pa. Oct. 27, 2008); *see also Tsosie v. United States*, No. 12-893, 2015 WL 6501245, at *1 (M.D. Pa. Oct. 27, 2015) ("Even if unopposed, summary judgment may only be granted when the moving party shows that it is entitled to a judgment as a matter of law.").

5

of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### III. Discussion

Two claims remain in this action against Defendant: (1) First Amendment retaliation for the August 27, 2014 search of Plaintiff's cell and resulting misconduct charge; and (2) use of excessive force in violation of the Fourteenth Amendment related to the September 8, 2014 events. I will address those claims *in seriatim*.

**A. Retaliation.**

Plaintiff first claims that Defendant searched his cell on August 27, 2014 and

6

issued a misconduct report related thereto in retaliation for Plaintiff's filing of grievances against him and his complaints to Defendant's superiors. (*See* Doc. 27, ¶ 31; *see also* Doc. 39, 21-24). The First Amendment to the United States Constitution reads, in part, that "Congress shall make no law . . . abridging the freedom of speech . . .; or the right of the people . . . to petition the government for a redress of grievances." U.S. Const. amend. I. "In order to establish illegal retaliation for engaging in protected conduct, [a plaintiff] must prove that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (footnotes omitted) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). While causation can be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence." *Id*. Motivation is thus typically shown by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id*. However, even where a plaintiff establishes a *prima facie* case of retaliation, "prison officials may still prevail if they establish that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *Id*. (quoting *Rauser*. 241 F.3d at 334).

Defendant challenges the First Amendment retaliation claim on two grounds. First, Defendant argues that Plaintiff fails to make out the second prong of a *prima facie* retaliation claim because "the large volume of plaintiff's complaints and grievances filed after the cell search reflects that he was not deterred in exercising his First Amendment rights by anything Christensen did." (Doc. 49, 12). Second, Defendant contends that "he would have taken the same action of issuing a misconduct charge regardless of the plaintiff's predilection to complain about [his] efforts, which

7

[he] did not even take seriously." (*Id*. at 13).³

Turning to the second prong of Plaintiff's First Amendment retaliation case, he must show he suffered an adverse action at the hands of Defendant. Adverse action is one "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 22, 225 (3d Cir. 2000) ("internal quotation marks omitted). Plaintiff cannot make such a showing here, Defendant insists, because Defendant's "alleged actions vis-a-vis the plaintiff, did not deter the plaintiff from exercising his First Amendment rights. To the contrary, after [Defendant] took actions against plaintiff, it emboldened the plaintiff to increase his rhetoric against [Defendant] and to file more grievances and claims." (*See* Doc. 48, ¶¶ 41-42). Thus, because his actions "did not deter the plaintiff from exercising his

---

³ As Defendant appears to assume that Plaintiff can demonstrate that he engaged in constitutionally protected activity and that the evidence shows an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, (*see* Doc. 49, 10-13), I assume as well that Plaintiff can make out the first and third prongs of a *prima facie* retaliation claim. Of course, the filing of a prison grievance "implicates conduct protected by the First Amendment," *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003), whether the grievance is made orally or in writing. *Mack v. Warden Loretto FCI*, 839 F.3d 286, 300 (3d Cir. 2016) ("we have little doubt concluding that prisoners' oral grievances are indeed entitled to constitutional protection."); *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) ("Filing a formal prison grievance clearly constitutes protected activity, and certain informal, oral complaints to prison personnel have been held to constitute protected activity as well."); *see also Daugherty v. Page*, 906 F.3d 606, 610 (7thd Cir. 2018) ("oral complaints about prison conditions" are protected under the First Amendment); *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) (inmate has a First Amendment right to file "non-frivolous grievances against prison officials on his own behalf, whether written or oral."). With respect to establishing the third prong of a First Amendment retaliation case by relying on unusually suggestive timing, the contemplated temporal proximity must be "on the order of days or weeks." *Rink v. Northeastern Educ. Intermediate Unit*, 717 F. App'x 126, 134 (3d Cir. 2017) (citations omitted); *see also Young v. City of Philadelphia Police Dep't*, 651 F. App'x 90, 98 (3d Cir. 2016) (span of eight days between protected conduct and alleged retaliatory conduct was "suggestive of retaliation at the *prima facie* stage.").

First Amendment rights," Defendant concludes that Plaintiff's First Amendment claim fails as a matter of law. (*Id*. at ¶ 43).

Defendant's position does not find support in Third Circuit precedent. In fact, the Third Circuit has rejected the claim that an inmate did not identify an adverse action when "he was not impeded in his efforts to complain to the outside world" because the question of whether the retaliatory action "is sufficient to deter a person of ordinary firmness from exercising his constitutional is an objective inquiry and ultimately a question of fact." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012); *Vaughn v. Cambria Cty. Prison*, 709 F. App'x 152, 154 n.1 (3d Cir. 2017) ("ordinary firmness test is an objective one, not subjective."); *Banda v. Corniel*, 682 F. App'x 170, 174 (3d Cir. 2017) (whether the plaintiff "was *actually* deterred is immaterial" to determining whether he or she suffered an adverse action). In other words, the proper consideration is "whether the act would deter a person of ordinary firmness, not whether the plaintiff was deterred." *Mirabella v. Villard*, 853 F.3d 641, 650 (3d Cir. 2017).[4] The Third Circuit explained in *Mirabella* that "[t]here is good reason for such

---

[4] Defendant cites decisions from this District to support his position that an inmate cannot demonstrate that he suffered an adverse action when he was not actually deterred from filing grievances and lawsuits. *See, e.g.*, *Perez v. Mahally*, No. 17-2117, 2017 WL 6497456, at *6 (M.D. Pa. Dec. 19, 2017) (dismissing First Amendment retaliation claim on the second prong where "Plaintiff's complaint reveals that he was not deterred by any alleged adverse action taken by Defendant Waligun because he avers that he filed grievances concerning the alleged assault incident."); *Harris v. Himes*, No. 16-40, 2017 WL 4119743, at *7 (M.D. Pa. Sept. 18, 2017) ("Plaintiff's own statements reveal that he was not deterred by any alleged adverse action taken by Defendant Frye because he states that once he returned to his cell block, he began filling out a grievance form."); *Brown v. Hannah*, 850 F. Supp. 2d 471, 479 (M.D. Pa. 2012) (the plaintiff was not deterred by any alleged adverse action where he filed a grievance through final review and proceed to litigate his claims in court). These decisions are not consistent with Third Circuit precedent because, as *Mirabella* and *Bistrian* explain, whether adverse action is sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights is an objective question. *See Mirabella*, 853 F.3d at 650; *Bistrian*, 696 F.3d at 376.

a rule: we will not 'reward government officials for picking on unusually hardy speakers. At the same time, we recognize that government officials should not be liable when the plaintiff is unreasonably weak-willed.'" *Id*. (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005)). And, an inmate "clearly suffer[s] consequences when . . . charged . . . with misconduct," such as "placement in restricted housing or restrictive confinement." *Watson*, 834 F.3d at 423; *see also Humphrey v. Sec. Pa. Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017) (retaliatory search of cell may be sufficient to constitute adverse action). Accordingly, as being issued a misconduct and being placed in restrictive housing would deter a person of ordinary firmness from engaging in protected activity and Defendant does not contest that Plaintiff engaged in constitutionally protected conduct or that his conduct was causally connected to the retaliatory action, Plaintiff has established a *prima facie* case of retaliation. As Plaintiff has made his *prima facie* case, "the burden shifts to the [D]efendant to prove by a preponderance of the evidence that [he] 'would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *Oliver v. Roquet*, 858 F.3d 180, 190 (3d Cir. 2017) (quoting *Rauser*, 241 F.3d at 333).

      The Third Circuit addressed this defense in *Watson*. There, the inmate plaintiff's claim arose from the alleged mishandling of his radio during a search of his cell. *See Watson*, 834 F.3d at 420. The plaintiff contended that the officer, Kline, pulled the antenna out so far from his radio that it broke, while the officer claimed that a portion of the antenna was already broken and secured by tape. *See id*. The plaintiff agreed that the antenna was secured by tape, but insisted the antenna was only loose, not broken. *See id*. Kline explained to the plaintiff that a broken radio was considered contraband and had to be confiscated, which required the completion of certain paperwork. *See id*. The plaintiff was angered when Kline, in completing that paperwork, refused to take responsibility for breaking the antenna and then also refused to prepare an incident report documenting that he broke the antenna. *See id*.

10

The plaintiff then asked a captain for a grievance form, but that request was denied. *See id*. at 420-21.

Later that day, the plaintiff was summoned to the prison security office where a different officer, Coutts, purportedly stated that the plaintiff had given the other staff members a "hard time" by asking for a grievance form and not dropping the matter, so he was going to issue Plaintiff a misconduct. *See id*. at 421. Coutts also was claimed to have said that the plaintiff did not handle the situation in "the polite way" by insisting on filing a grievance. *See id*.

The plaintiff later completed a grievance on a form he obtained from another inmate, but before he could file it, he was issued a misconduct notice that was prepared by Coutts citing him with a Class I misconduct. *See id*. The plaintiff was ultimately found guilty of a misconduct before the hearing officer, but the charge was reduced to a Class II misconduct. *See id*. Imposed as a penalty was the confiscation of the radio. *See id*. The plaintiff's subsequent appeals were denied. *See id*. Litigation ensued. *See id*. After all of the plaintiff's claims were dismissed except his retaliation claims, the remaining defendants in the action moved for summary judgment on the First Amendment claim. *See id*. The district court granted the motion, concluding that even if the plaintiff established a *prima facie* case of retaliation, judgment in favor of the defendants was warranted based on the same decision defense. *See id*. The plaintiff appealed. *See id*.

After concluding that the plaintiff presented a *prima facie* case against one of the four remaining defendants, Coutts, the *Watson* court considered whether he established the same decision defense. Citing its precedent, the Third Circuit observed that "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence." *Id*. at 425 (citing *Carter v. McGrady*, 292 F.3d 152, 157

(3d Cir. 2002)).[5] In that regard, the court reiterated that the decisions of prison administrators in the context of disciplinary proceedings are entitled to "great deference." *See id*. To determine "whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion" they must be afforded, a court "evaluate[s] the 'quantum of evidence.'" *Id*. at 426.

The *Watson* court distinguished its facts from those in *Carter*, where, "given the force of the evidence that Carter was guilty of receiving stolen property, . . . there was no genuine issue of material fact that his misconduct citation was reasonably related to legitimate penological interests, and that Carter would have been disciplined notwithstanding his jailhouse lawyering." *Id*. (citing *Carter*, 292 F.3d at 159). The Third Circuit explained:

> Watson's situation is different. Watson's broken radio was not so "clear and overt" a violation that we can conclude that he would have been written up if he had not also given prison officials "a hard time." The radio had allegedly been in the same condition for more than a year. Moreover, there is evidence that other inmates had radios with loose or broken antennas, but those items were not confiscated and the inmates did not receive a misconduct. Finally, Kline did not charge Watson with a misconduct when he confiscated the radio. Accordingly, a reasonable fact finder could conclude that the misconduct was issued in retaliation for Watson's statement that he was going to file a grievance, and not in furtherance of legitimate penological goals.

*Id*. The *Watson* court thus reiterated, consistent with Third Circuit precedent, that "a plaintiff can make out a retaliation claim even though the charge against him may have

---

[5] In *Carter*, the inmate claimed he was given a misconduct in retaliation for his functioning as a jailhouse lawyer. *See Carter*, 292 F.3d at 153. The *Carter* court found the inmate's claim unconvincing because "[e]ven if prison officials were motivated by animus to jailhouse lawyers, Carter's offenses, such as receiving stolen property, were so clear and overt that we cannot say that the disciplinary action taken against Carter was retaliatory." *Id*. at 159. Noting the "quantum of evidence" of the inmate's misconduct, the Third Circuit was unable to "say that the prison officials' decision to discipline Carter for his violations of prison policy was not within the broad discretion that [the court] must afford them." *Id*. (quotation and citation omitted).

been factually supported." *Id.* (citing *Hill v. City of Scranton*, 411 F.3d 118, 130 (3d Cir. 2005)).

In his concurrence in *Watson*, Judge Ambro observed that two questions were raised by the Third Circuit's decision in *Carter*. "First, what 'quantum of evidence is required to trigger *Carter*? And in cases where that 'quantum' has been reached, can the same decision defense nonetheless fail?" *Id.* at 427 (Ambro, J., concurring). As explained by Judge Ambro, "not every violation of prison protocols supported by some evidence will bar a First Amendment retaliation claim" in the Third Circuit. *Id.* at 431 (Ambro, J., concurring). This is so because "[i]f officials were allowed to hunt for every minor instance of misconduct in an effort to punish inmates for their speech, the First Amendment would ring hollow inside a prison's walls." *Id.* at 430. (Ambro, J., concurring). With respect to the second question left opened by *Carter*, Judge Ambro observed that the "proof that the official would not have taken the same action in the absence of constitutionally protected activity" would need to be strong. *Id.* (Ambro, J., concurring). Evidence that the official had "mixed motivations" would not be enough, since "[t]his is the situation where the same decision defense is supposed to apply." *Id.* (Ambro, J., concurring). But, "where there is direct evidence that retaliation drove a charging decision, the defense does not shield a defendant from liability." *Id.* (Ambro, J., concurring). Judge Ambro cautioned against "overreading [ ]his concurrence," reiterating that "though a legitimate prison disciplinary report is not an absolute bar to a retaliation claim, it is probative and potent summary judgment evidence." *Id.* at 431 (Ambro, J, concurring) (internal quotation and citation omitted).[6]

Based on the undisputed facts of record, Defendant has satisfied his burden to

---

[6] Judge Hardiman dissented in *Watson,* stating that "the evidence the parties have proffered on summary judgment establishes at most that a prison guard acted with mixed motive, which is not enough." *Watson*, 834 F.3d at 431 (Hardiman, J., dissenting).

13

establish the same decision defense, so summary judgment will be granted on the First Amendment retaliation claim. In particular, the misconduct received by Plaintiff was reasonably related to a legitimate penological interest, *i.e.*, the possession of altered items in prison. Furthermore, "[a] finding of guilt on a misconduct charge, combined with 'a meaningful written statement of the evidence relied on and the reasons for the action taken,' establishes a 'quantum of evidence' of misconduct sufficient to warrant summary judgment." *Hudson v. Carberry*, No. 15-1282, 2018 WL 6591812, at *8 (quoting *Williams v. Folino*, 664 F. App'x 144, 148-49 (3d Cir. 2016)). The record also shows that Defendant was the housing officer for the unit Plaintiff was located, and it was Defendant's responsibility to write up an inmate with contraband in his cell. (Def.'s SMF, Ex. "A", 37). Defendant did so without regard to Plaintiff's threats of lawsuits against him and/or report to Defendant's superiors. (*See id*. at 37-38). On this unrebutted evidence and noting the great deference afforded to prison officials in the context of prison disciplinary proceedings, Defendant has come forward with a sufficient quantum of evidence of misconduct to demonstrate that the discipline imposed was reasonably related to a legitimate penological interest and that Plaintiff would have been disciplined regardless of his grievances and complaints to Defendant's superiors. *See*, *e.g.*, *Rivera v. McCoy*, 729 F. App'x 142, 145 (3d Cir. 2018).

It is true, of course, that the misconduct Plaintiff was found guilty of here, possession of contraband for an altered item, *i.e.*, a blue pen with a red ink cartridge, appears similar to the "not so clear and overt a violation" of prison policy at issue in *Watson*, namely a radio antenna secured by tape. *Watson*, 834 F.3d at 426; *see also id*. at 431 (Ambro, J., concurring) (characterizing the misconduct at issue as a "minor offense[ ]"). But the record in the matter *sub judice* stands in contrast to that in *Watson*. There, the radio had been in the altered condition for more than a year, other inmates had radios with loose or broken antennas and did not receive misconducts, and the inmate plaintiff was not charged with a misconduct when the radio was first

confiscated. *See Watson*, 834 F.3d at 426. The record also contained evidence that the plaintiff was told he was being written up for giving prison officials a "hard time" about the radio. *See id*. Here, though, there is no evidence that other inmates had altered pens and were not charged with misconduct or that Plaintiff had the pen previously and not been written up. Plaintiff was also given a misconduct at the time the pen was confiscated. Finally, the record does not include any evidence that the misconduct was issued because of Plaintiff's protected activities, and, to the contrary, contains evidence that Plaintiff would have been written up regardless of his conduct. Thus, unlike in *Watson* where a jury could reasonably have found that the misconduct was issued in retaliation for the plaintiff's statement that he was going to file a grievance, a reasonable jury here would be unable to conclude that Plaintiff would not have been given a misconduct in the absence of his filing of grievances and complaints to Defendant's superiors. Summary judgment will be granted on the First Amendment retaliation claim.

**B.    Excessive Force.**

Plaintiff's second remaining claim asserts that Defendant used excessive force against him on September 8, 2014. Plaintiff was a pretrial detainee at that time, so his excessive force claim is governed by the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395, n.10 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) ("the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."). The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of life, liberty, or property without due process of the law." U.S. Const. amend. XIV, § 1. To demonstrate a due process violation, a detainee must prove "that the force purposely or knowingly used against him was objectively unreasonable," meaning "that the actions [were] not 'rationally related to a legitimate nonpunitive governmental purpose.'" *See Kingsley v. Hendrickson*, - - - U.S. - - -, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 561, 99 S. Ct. 1861, 60 L.

Ed. 2d 447 (1979)). "[O]bjective reasonableness turns on the facts and circumstances of each particular case." *Id*. To determine the reasonableness of the force used, a court is to consider the following non-exclusive list of factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the defendant; and (6) whether the plaintiff was activity resisting. *See id*. However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Constitution. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (citation omitted) (analyzing claim under the Fourth Amendment); *see also Coley v. Lucas Cty.*, 799 F.3d 560, 539 (6th Cir. 2015) (same principle applies to the Fourteenth Amendment).

With regard to Defendant grabbing Plaintiff's arm, the evidence of record viewed in the light most favorable to Plaintiff does not demonstrate that the force used was objectively unreasonable. For one, not every touch violates an individual's constitutional rights. *See, e.g.*, *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 175 (3d Cir. 2001) (noting that the defendant's act of pushing student in the shoulder forcing her inches back into a door jamb might be tortious but was not a constitutional violation of excessive force under the Fourteenth Amendment). And, the above cited factors weigh in favor of granting summary judgment to Defendant on the due process claim. The amount of force used was minimal, as Plaintiff's arm was grabbed briefly. Second, as documented in the medical incident report, Plaintiff was observed the day after the use of force incident to be without injury. Third, the force used, grabbing Plaintiff's arm, was limited. Considering the record evidence in the light most favorable to Plaintiff and applying the pertinent factors outlined in *Kingsley*, Defendant did not use excessive force against Plaintiff.

The relevant factors also support a finding that Defendant's actions were objectively reasonable with respect to the shackling of Plaintiff's ankles. Here, after

learning that he applied the shackles too tightly, it is undisputed that Defendant immediately loosened them. Thus, Defendant's effort in tempering the force used weighs in favor of finding that his actions were objectively reasonable. In that regard, upon learning that the shackles were tight, Defendant had the option to either ignore Plaintiff's complaints or address them, and Defendant did the latter. While there is evidence suggesting that Defendant smiled and laughed after Plaintiff informed him that the shackles were too tight, it is uncontested that Defendant immediately loosened the shackles. *See Kopec v. Tate*, 361 F.3d 772, 780 (3d Cir. 2004) ("[A] viable excessive force claim requires that the officer or officers had either constructive or actual notice that the force applied by the handcuffs was excessive under the circumstances, yet the officer or officers failed to respond to such notice in a reasonable manner."). Further, Plaintiff did not suffer any injuries from the shackling according to the nurse's records. Based on these facts and viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not conclude that excessive force was used with respect to the shackling of Plaintiff's ankles. Defendant's motion will also be granted on the Fourteenth Amendment claim.

## IV. Conclusion

For the above stated reasons, Defendant's motion for summary judgment will be granted. Judgment will be entered in favor of Defendant and against Plaintiff on the remaining First and Fourteenth Amendment claims.

An appropriate order follows.

| | |
|---|---|
| January 30, 2019 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

17